(Hamilton County Court of Common Pleas.)

July, 1897.

IN THE MATTER OF THE APPLICA-
TION OF JOHN DONAHUE FOR A
WRIT OF HABEAS CORPUS FOR
"KID" ROACH, ALIAS PAT-
RICK CASEY.

A dismissal upon the charge of illegal vot-
ing under sec. 7047, Rev. Stat., is not a bar
against prosecution under sec. 2926w-3, for
(at the same election) falsely and fraudu-
lently obtaining registration.

SMITH, J.

The evidence and the papers from the
police court of the city of Cincinnati in this
case, show, that on April 6, 1897, an affida-
vit and warrant was filed charging Patrick
Casey, the prisoner, with illegal voting at a
certain election held in precinct B. of the
Fourth Ward, of the city of Cincinnati, on
or about the 5th day of April, 1897; that on
the same day, to-wit, April 6, 1897, informa-
tion for illegal voting was filed in the said
police court of the city of Cincinnati, in-
forming the court that the said Patrick Casey
did, on or about the said 5th day of April,
1897, vote illegally at an election held in the
city of Cincinnati aforesaid; that the defend-
ant pleaded "not guilty" to said charge,
and was tried and dismissed.

That afterwards, to-wit, on the 13th day
of July, 1897, an affidavit and warrant for
the said prisoner was filed, charging again
that he, on or about the 5th day of April,
1897, at the said city of Cincinnati, did un-
lawfully vote at an election held in the said
city of Cincinnati, on or about said date.
That on August 4, 1897, the said prisoner
filed a plea in bar to said affidavit filed July
13, 1897, and upon hearing in the police court
upon the same, was dismissed. That there-
upon, on August 5, 1897, an affidavit and
warrant for false registration, and also an
affidavit and warrant for false and fraudu-
lent registration, were filed in the police
court of the city of Cincinnati, against the
prisoner, charging that on or about the 27th
day of March, 1897, at the city of Cincin-
nati, the said Patrick Casey, did unlawfully,
falsely and fraudulently, apply for and obtain
registration as an elector in precinct B. in
the Fourth Ward of the city of Cincinnati.
The evidence further shows, that after the
first trial and dismissal of the prisoner on
the charge of illegal voting, the prisoner
went to the city of Chicago, in the state of
Illinois, and that upon the issuance of the
second affidavit for illegal voting, an officer
was sent to Chicago to bring the prisoner
back to answer the charge; and that, after
having reached this city, and after the plea
in bar was sustained by the police court, he
was charged again with another offense, that
of false and fraudulent registration. And
the claim of the prisoner is, that having
involuntarily come from the state of Illinois
to answer the charge set out in the second

warrant, before he could be tried for any
other offense, he should have been allowed
the privilege of returning to the state from
which he came.

It is admitted at this hearing that no
requisition papers were issued for the
prisoner, and therefore no extradition pro-
ceedings were had. There being no extra-
dition proceedings, therefore, the case of ex
parte McKnight, reported in the 48 Ohio St.,
page 588, referred to by counsel for the
prisoner, has no application in this case.

The claim made by the prisoner is, that
he involuntarily came into the jurisdiction
of the police court to answer to one charge,
and after being dismissed on that charge,
was arrested for another, before he had the
privilege of returning to his asylum. The
evidence, however, on this point does not
bear it out, as the testimony of the officer
who went to Chicago to bring him back,
shows that he did not have extradition
papers and not even the warrant in his pos-
session, and did not mislead the prisoner.
And the prisoner's testimony, also, is that
he said to the officer that he would come
back on the charge for which he was wanted,
to wit:—illegal voting, without any extra-
dition papers.

It is also claimed by the prisoner, that
being dismissed on the ground of illegal
voting, if he was a legal voter he must have
been lawfully registered. The charge of il-
legal voting is under sec. 7047 of the Rev.
Stats., and the penalty attached is such as
to make the offense a misdemeanor.

The charge of falsely and fraudulently ob-
taining registration, is under sec. 2926w-3,
of the Rev. Stats., and the penalty makes
this offense a felony.

It is evident that the legislature intended
two separate offenses—one under the general
election law, and the other under the regis-
tration law.

The judgment, therefore, of the court is,
that the release of the prisoner will be re-
fused, and he is hereby remanded to the
custody of the sheriff.

C. S. Sparks, for the writ.

Robert C. Pugh, contra.

---

(Hamilton County Court of Common Pleas.)

C. P. & V. R. R. CO. v. VILLAGE OF
HYDE PARK.

A railroad company has an adequate
remedy at law where appropriation proceed-
ings are brought to condemn land belonging
to the company abutting on its right of way.

In such proceedings, jurisdictional ques-
tions must be determined before going to a
jury.

In such proceedings it is probably the
better practice for the company to file an
answer.

An action for an injunction against appro-
priating for street purposes a strip of ground

passing through the land of the company for 700 feet and abutting on its right of way.

JELKE, J.

I am of opinion that plaintiff has an adequate remedy at law for the matters complained of in the petition, in the appropriation proceedings in cause No. 110,330 of this court.

In Toledo & Ohio Cen. Ry. Co. v, The City of Fostoria, 7 O. C. C., 296, it was held that before a municipality can have a judgment of condemnation against a railroad company, certain jurisdictional facts must be determined by the court.

First—A passage of a resolution or ordinance by a city council by a two-thirds vote authorizing the appropriation.

Second—That the appropriation will not necessairly interfere with the reasonable use of such road or land by the railroad company.

Third—Notice of time, place and service.

I incline to the opinion that the question of the validity of the incorporation of the village of Hyde Park, the regularity of all the municipal legislation leading up to the institution of such appropriation proceedings are such jurisdictional questions, which the railroad company is entitled to have determined in said case before going to a jury. The second is the same defense raised by the railroad company in the case at bar. The procedure by which these issues are to be raised is not satisfactorily outlined in the statutes.

There is no express provision in the statutes for the filing of an answer; as to this the secs. 2232-2261, are silent. However, inasmuch as the court must determine these questions, if they can be most clearly presented by answer, I hold that the court can grant leave for the filing of such answer.

An answer was filed in the case of Southern Railway v. Haas et al., 42 Ohio St., p. 239, being proceedings under these same sections of the statutes, and while the propriety of filing such answer was not considered, the defense therein set up was considered and passed upon by all the courts from the common pleas to the supreme.

The injunction herein prayed for will therefore be denied.

W. J. Davidson for plaintiff.
Walter Burck, contra.

---

(Logan County Common Pleas Court.)
May Term, 1897.

W. EDGAR AIKIN AND HARRY AIKIN
v. MARY E. SPELLMAN AND
THOMAS J. SPELLMAN,
et al.

---

Where T. S., the owner in fee, conveys lands to his son, T. J. S., "during his natural life, and then to pass exclusively to the heirs of his own body in fee simple forever, provided T. J. S. does not sell and convey said premises before his death, in such event, the title passes to the purchaser." In case of the re-conveyance by T. J. S. of said real estate to T. S., by deed in fee simple, and by T. S. to the wife of I. J. S., in fee, that the wife of T. J. S. takes an estate in fee and that the limitation in tail by deed of T. S., is thereby defeated.

DOW, J.

On the 5th day of December, 1894, the defendant, Mary E. Spellman and her husband, Thos. J. Spellman, in order to secure the payment of a note of $500, dated as of that date, executed their certain mortgage deed, and thereby conveyed to plaintiff's assignor, his heirs and assigns, the south half of the north half of the south-east quarter of sec. 1, township 7, south of range 8, east, together with another tract of 44 acres, which mortgage was filed for record on the 6th day of December, 1894, at 1:15 o'clock, p. m.

On the same day, said Mary E. Spellman and her husband, by a similar mortgage, conveyed the same real estate to the defendant, George W. Harshman, to secure a loan of $3,500, which mortgage was filed for record on the 5th day of December, 1894, at 2:20 o'clock, p. m.

That on the 25th day of November, 1895, the defendant, Simpson L. Horn, by the consideration of the court of common pleas, received a judgment against said Spellman's for the sum of $211.00.

No part of said notes or judgment having been paid, this action is brought by plaintiffs asking an order for the sale of said real estate, and that the proceeds be applied in payment of their indebtedness.

The defendants, Aldo E. Spellman and Ida B. Cook, the only issue of the body of said Thos. J. Spellman, file separate answers, in which they allege that at the time of the execution of said mortgages, said Thomas J. Spellman and Mary E. Spellman, had, and now have, only a life estate in said real estate and that the fee simple title therein, subject to said life estate, was, and now is, in said children, and asking that no greater estate therein be ordered sold than an estate for the life of Thos. J. Spellman therein.

The whole question therefore presented in this case, is whether at the time of the execution of said mortgages, said Mary E. Spellman was the owner of the estate in fee to said real estate, or whether she was merely the owner of an estate for the life of her husband.

On the 10th day of August, 1875, Thomas Spellman, the father of Thomas J. Spellman, was the owner in fee of the south-east quarter of sec. 21, township 7, range 8, east. On that day, he conveyed to his said son, Thomas J. Spellman, the undivided half of said real estate, (granting clause,) "To said Thomas J. Spellman, during his natural life and then to pass exclusively to the heirs of his own body in fee simple forever, provided said Thomas J. Spellman does not sell and convey said premises before his death; in